UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEWIS JOSH BARBERREE,

v.  Case No. 8:09-cr-266-T-33MAP
 8:10-cv-2492-T-33MAP

UNITED STATES OF AMERICA.
_____

**O R D E R**

This cause is before the Court on Barberree's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence. (Docs. CV-1 with amendment at Doc. CV-10 striking grounds one and three; CR-126) (hereinafter "motion" or "motion to vacate"). Barberree attacks the legality of his enhanced sentence under 21 U.S.C. §§ 846, 841(b)(1)(A), and 851, claiming that 1) one of his predicate prior convictions no longer qualifies as a "crime of violence" under section 4B1.2 of the United States Sentencing Guidelines (defining "career offender" for purposes of the guidelines); and 2) the Government's Information of prior conviction under 21 U.S.C. § 851was defective. Barberree's guidelines claim is without merit and, in any event, would provide him no relief, as he was sentenced below the guideline range to the statutory mandatory minimum. Barberree's section 851claim is procedurally barred and otherwise without merit. Consequently, the motion to vacate must be denied.

PROCEDURAL BACKGROUND

In June 2009, a federal grand jury in the Middle District of Florida indicted Barberree for conspiracy to possess with intent to distribute 50 grams or more of methamphetamine (the "conspiracy charge"). Doc. CR-1.  Barberree subsequently entered into a plea

agreement with the Government that was filed in the district court on August 14, 2009. Doc. CR-50. On that same date, the Government filed an Information, pursuant to 21 U.S.C. § 851, providing notice of Barberree's previous Hillsborough County, Florida, conviction for trafficking in amphetamine. Doc. CR-51.

Barberree pled guilty to the conspiracy charge on September 11, 2009, and this Court adjudicated him guilty on September 21, 2009. See Doc. CR-66 ("Report and Recommendation Concerning Plea of Guilty") and Doc. CR-74 ("Acceptance of Plea of Guilty and Adjudication of Guilt").

In January 2010, this Court sentenced Barberree to 240 months imprisonment, followed by eight years supervised release. Doc. CR-110 (judgment); Doc. CR-133 ("Transcript of Sentencing Hearing") at 24-25. Barberree did not file a direct appeal.

Barberree filed the instant motion on November 8, 2010, pursuant to 28 U.S.C. § 2255, challenging his sentence on three grounds. Doc. CV-1/CR-126. Barberree subsequently moved to amend his motion, striking two of the three grounds advanced in his original motion and adding support to the remaining one. Doc. CV-10. In summary, Barberree has two complaints. First, he attacks his designation as a "career offender" under the sentencing guidelines, claiming that his prior, Florida conviction for battery on a law enforcement officer (the Florida "BLEO" conviction) is no longer a predicate "crime of violence" in light of *Johnson v. United States*, 559 U.S. ___, 130 S.Ct. 1265 (2010) and *Gilbert v. United States*, 609 F.3d 1159 (11th Cir.), *opinion vacated on reh'g en banc*, 625 F.3d 716 (11th Cir. 2010). Second, he attacks his enhanced sentence under 21 U.S.C. §§ 841 and 846, claiming that the prior, amphetamine trafficking conviction relied upon to increase the minimum mandatory sentence had been vacated and that the section 851

2

Information filed by the United States was defective.[1]

## FACTUAL BACKGROUND

In his plea agreement, Barberree agreed to plead guilty to the conspiracy charge and the Government agreed to dismiss four additional counts of the June 2009 indictment. See Doc. CR-50. Barberree expressly waived the right to appeal his sentence, "collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except: (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or, (c) the ground that the sentence violates the Eighth Amendment to the Constitution," unless the Government appealed. Id. at 12-13. (Emphasis in original.) Barberree agreed that the conspiracy charge was "punishable by an enhanced mandatory minimum term of imprisonment of 20 years up to life[.]" Id. at 1.

The Government filed a timely section 851 Information on August 14, 2009, which included the following description of Barberree's Florida amphetamine trafficking conviction:

---

[1] Title 21 U.S.C. §§ 846 and 841(b)(1)(A) provide an increased minimum mandatory term of twenty years' imprisonment where one commits a violation "after a prior conviction for a felony drug offense has become final." 21 U.S.C. § 851 provides proceedings to establish such a prior conviction, to wit: the Government files an information prior to trial or entry of a guilty plea stating the conviction to be relied upon (§ 851(a)(1)); before pronouncing sentence, the court inquires of the defendant if he contests the prior conviction (§ 851(b)); if so, he files a written response and the court holds a hearing on the matter (§ 851(c)); if not - or if the court finds, after a hearing, the prior conviction is a proper predicate- the court proceeds to sentence the defendant (§ 851(d)(1)).

> On or about April 13, 2005, the defendant was convicted of Felony trafficking in Amphetamine, in the Circuit Court, Thirteenth Judicial Circuit in and for Hillsborough County, Case No. 01-CF-005115, in violation of the laws and statutes of the State of Florida[.]

Doc. CR-51 at 2.

Barberree pled guilty to the conspiracy charge on September 11, 2009. At the change of plea hearing, the Magistrate Judge noted the filing of the section 851 Information and advised Barberree of the enhanced, twenty-year minimum mandatory term of imprisonment carried by the conspiracy charge. See Doc. CR-132 ("Transcript of Change of Plea Hearing") at 10-12. Counsel for Barberree also acknowledged the section 851 Information, noted the twenty-year minimum mandatory sentence, and stated his belief that Barberree "may qualify as a career offender." Id. at 10. Barberree indicated that he understood the penalties he faced. Id. at 13. The Magistrate Judge warned Barberree that he would be unable to "back out" of his plea later if his sentence was ultimately more than he expected, and Barberree indicated his understanding. Id. at 14-15. The Magistrate Judge reviewed the plea agreement and waiver of right to appeal or collaterally attack his sentence with Barberree and asked Barberree whether he understood the agreement and the consequences of the appeal waiver. Id. at 15-17. Barberree responded that he did. Id. at 17. Barberree stated that he was satisfied with his plea agreement and the performance of his attorney. Id. at 17-18.

The Presentence Investigation Report (PSR) issued on November 3, 2009, and cataloged Barberree's criminal history (PSR at 7-11), including the Florida amphetamine trafficking conviction. (PSR ¶ 57). For this conviction, the PSR noted an arrest date of April 3, 2001; an adjudication date of July 22, 2003; and a re-sentencing date of April 13, 2005.

Id. The PSR also included Barberree's 2003 BLEO conviction. The description in the PSR associated with the BLEO conviction reads:

> On November 7, 2002, two detention deputies were walking the defendant back to his cell at the Falkenburg Road Jail when he turned to them in an aggressive stance. The deputies attempted to grab the defendant's arms, but he pulled away. The defendant started throwing punches, striking one of the deputies in the torso and head, and striking the other deputy once in the ear and on the forehead. The deputies forced the defendant to the ground where they placed restraints on him before placing him in a restraint chair. The deputies sustained minor injuries, and their uniforms were torn.

PSR ¶ 58.

The PSR recommended that Barberree qualified for an enhanced penalty as a career offender under § 4B1.1 of the sentencing guidelines (PSR ¶ 44), which requires that a defendant have two prior convictions for "crimes of violence" or "controlled substance offenses."[2] Accordingly, the PSR recommended that the Court assess Barberree an enhanced offense level of 37 pursuant to U.S.S.G. § 4B1.1(A) (PSR ¶¶ 44, 45), with a three level adjustment for acceptance of responsibility (PSR ¶ 46), resulting in a total offense level of 34. (PSR ¶ 47). The PSR recommended further that the Court assess Barberree a criminal history category of VI (PSR ¶¶ 63, 64). Based on these recommendations, Barberree faced an advisory United States Sentencing Guidelines range of 262-327 months. (PSR ¶ 110). The PSR also noted the enhanced, statutory minimum mandatory term of 20 years imprisonment under 21 U.S.C. § 841(b)(1)(A). (PSR ¶ 109). An addendum to the PSR, dated January 7, 2010, reflected Barberree's written objections to both the enhanced statutory penalties and the career offender enhancement.

---

[2] The PSR cites Barberree's Florida amphetamine trafficking and BLEO convictions as the predicates relied on in determining that Barberree was subject to the §4B1.1 enhancement. PSR ¶ 44.

At sentencing on January 14, 2010, Barberree explained through counsel that, notwithstanding earlier written objections, he had no objections to either the factual accuracy of the PSR or the PSR's guidelines calculations. Doc. CR-133 at 7-9. On the issue of the amphetamine trafficking conviction, counsel for Barberree discussed his research of the underlying state case and his conclusion that the conviction was valid. Doc. CR-133 at 8. Counsel further conceded that the BLEO conviction was a "crime of violence" and, thus, a valid career offender predicate. Id. at 9. Barberree withdrew his previous objections to the PSR. Id.

The Court adopted the PSR's guideline calculations and found, consistent with the PSR's recommendation, that Barberree was a career offender under the guidelines. Doc. CR-133 at 10. Nonetheless, the Court varied below the guideline range in sentencing Barberree to the statutory minimum mandatory 240 months imprisonment. Id. at 24. At the conclusion of the hearing, the Court asked whether Barberree objected to the sentence or to the manner in which sentence was pronounced, and Barberree had no objection. Id. at 28.

## DISCUSSION

### Barberree Waived the Right to Collaterally Attack His Sentence

Barberree waived the right to collaterally attack his sentence in his plea agreement. The right to appeal is statutory and can be waived knowingly and voluntarily. *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). Barberree entered into a knowing and voluntary plea agreement in which he "expressly waive[d] the right to appeal [his] sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range," barring an upward departure by the

sentencing court, a sentence in excess of the statutory maximum, or violation of the Eighth Amendment. Doc. CR-50 at 12-13. None of these conditions are present, and the Government has not appealed the sentence.

For this Court to the enforce the waiver, the Government must demonstrate only that this Court specifically questioned Barberree concerning the waiver during the Fed. R. Crim. P. 11 colloquy or that it is manifestly clear from the record that Barberree otherwise understood the full significance of the waiver. *See Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005); *Bushert,* 997 F.2d at 1351. In this case, this Court specifically questioned Barberree about his waiver during the Rule 11 colloquy, and it is clear from the record that Barberree understood the full significance of the waiver. Doc. CR-132 at 15-17.

This Court must afford the Government the benefit of its bargain in the agreement by enforcing the terms of the waiver. *See United States v. Bascomb*, 451 F.3d 1292, 1296-97 (11th Cir. 2006) (dismissing appeal based on waiver, and stating, "Defendants and the government alike benefit from the ability to bargain and undermining the enforceability of such bargains harms all parties that use them").

**Barberree's Designation as a Career Offender Under the Sentencing Guidelines**

Barberree claims that he no longer qualifies as a career offender under the sentencing guidelines and should therefore have his guilty plea set aside or be resentenced.

<u>Barberree's Career Offender Complaint Is Moot</u>

Even assuming Barberree's claim has merit (and it does not), Barberree would be entitled to no relief, as he was not sentenced within the career offender guideline range. He received the statutory minimum mandatory term of imprisonment, a 22-month variance

below the low end of the guideline range. See Doc. CR-110; Doc. CR-133 at 24-25. In short, vacating his designation as a career offender under the guidelines would not relieve him of the statutory minimum prison term for his offense of conviction.

Barberree's Career Offender Complaint Is not Cognizable

Moreover, Barberree's claim that his career offender designation is now improper is not cognizable on collateral review. Collateral review pursuant to 28 U.S.C. § 2255 is not a substitute for direct appeal. *See Burke v. United States*, 152 F.3d 1329, 1331-32 (11th Cir. 1998) (citing *Sunal v. Large*, 332 U.S. 174, 178 (1947)). Nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a " 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.' " *Reed v. Farley*, 512 U.S. 339, 348 (1994) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). An allegation that a given sentence is contrary to the sentencing guidelines is a non-constitutional issue that does not provide a basis for collateral relief in the absence of a complete miscarriage of justice. *See Burke*, 152 F.3d at 1331-32 (collecting cases).

Barberree's claim that the guidelines were misapplied in his case does not present a constitutional issue or "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Reed*, 512 U.S. at 348. His sentence was at all times within the authorized statutory range. In fact, his sentence was set below the career offender guideline range, twenty-two months to Barberree's benefit. In these circumstances, Barberree cannot establish that any alleged misapplication of the sentencing guidelines was fundamentally unfair or a miscarriage of justice sufficient to form the basis for collateral relief. *See Burke*,

152 F.3d at 1331-32.

Barberree cites to the Eleventh Circuit's panel opinion in *Gilbert* for the proposition that, in light of an intervening Supreme Court decision, he is "actually innocent" of being a career offender and implies that his wrongful designation as a career offender results in "a complete miscarriage of justice" justifying collateral review.

In November 2010 (after Barberree filed his § 2255 motion) the Eleventh Circuit granted a petition for rehearing *en banc* in *Gilbert*, vacating the panel opinion. Therefore, the prior panel opinion is "officially gone" and has "no legal effect whatever" in the present case. *See United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002). The Eleventh Circuit has not yet issued an en banc opinion.

The misapplication of the career offender guideline resulting in a sentence that remains within the applicable statutory penalty range does not produce a miscarriage of justice cognizable on collateral review. Barberree's claim could be denied on this ground. However, Barberree's guidelines-application claim is moot (as discussed above) and otherwise without merit (as discussed below).

<u>Barberree's BLEO Conviction Is a Career Offender Predicate</u>

Notwithstanding the fact that Barberree was sentenced below the career offender guideline range, his designation as a career offender was proper, and it remains so. Barberree contends that his Florida BLEO conviction no longer constitutes a conviction for a "crime of violence" pursuant to *Johnson v. United States*, 130 S. Ct. 1265 (2010), and therefore he no longer has the requisite two qualifying convictions to support the enhancement.

Barberree's contention that the Supreme Court's decision in *Johnson* compels the

conclusion that his prior Florida BLEO conviction may no longer be considered a "crime of violence" is mistaken. In *Johnson,* the Supreme Court examined whether simple battery under Florida law is a "violent felony" for purposes of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1).[3] The *Johnson* Court considered only the first clause of the ACCA's definition of a "violent felony" which requires that the offense have "as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), and held that "the phrase 'physical force' means 'violent force -- that is, force capable of causing physical pain or injury to another person.'" 130 S. Ct. at 1271. Because the Florida felony battery offense at issue there, and here, required "proof of only the slightest unwanted physical touch," such as a tap on the shoulder, the Supreme Court concluded that the offense could not categorically be considered a "violent felony" under section 924(e)(2)(B)(i). *Id.* at 1269-70, 1273-74. The Eleventh Circuit reached a similar result in *United States v. Williams*, examining whether a conviction under Florida's BLEO statute, Fla. Stat. § 784.07(2)(b), without more, supported a career offender designation under the guidelines. *See* 609 F.3d 1168, 1170 (11th Cir. 2010).

The *Johnson* court did not, however, hold that the Florida offense of battery on a law enforcement could never be considered a "violent felony." Central to the Court's analysis was the lack of documentation in the record before the district court to show that the battery conviction rested on anything other than non-violent conduct. *Id.* at 1269; *see also Shepard v. United States*, 544 U.S. 13, 26 (2005). What remains, then, is the

---

[3] The Eleventh Circuit has "repeatedly read the definition of 'violent felony'" under the ACCA as "virtually identical to the definition of a 'crime of violence' under U.S.S.G.§ 4B1.2." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008).

interpretation that a Florida conviction for BLEO could be a "crime of violence" depending on the particular facts of the conviction.

Here, the record establishes facts that the Court can use, under the "modified categorical approach,"[4] to conclude that Barberree's BLEO offense was a crime of violence. According to the PSR, Barberree "started throwing punches" at deputies at the Falkenburg Road Jail, "striking one of the deputies in the torso and head, and striking the other deputy once in the ear and on the forehead." (PSR ¶ 58). As a result of the scuffle, "[t]he deputies sustained minor injuries, and their uniforms were torn." Id. In resolving an ambiguity as to whether a particular conviction is a "crime of violence," the Court may base its factual findings on undisputed statements in the PSR. *See United States v. Beckles*, 565 F.3d 832, 843 (11th Cir. 2009); *United States v. Bennett*, 472 F.3d 825, 832-35 (11th Cir. 2006). Failure to object to facts in a PSR admits those facts for sentencing purposes. *Beckles*, 565 F.3d at 844; *Bennett,* 472 F.3d at 834; *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006). Barberree did not object to the PSR's description of the facts underlying his BLEO conviction prior to, during, or after his sentencing. See Doc. CR-133. Therefore, he has admitted that the offense at issue involved striking deputies and causing minor injuries. These are not acts of "slight intentional touching" that were of concern in *Johnson* or that would technically satisfy the Florida definition of battery without amounting

---

[4] "When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the 'modified categorical approach' that we have approved [citation omitted], permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record-including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Johnson*, 130 S. Ct. at 1273.

to violent force. Instead, these facts satisfy the definition of physical force –"force capable of causing physical pain or injury to another person"– established in *Johnson*. It appears that Barberree took these actions precisely to cause physical pain or injury to the deputies. Therefore, the facts underlying Barberree's BLEO conviction indicate that it does qualify as a "crime of violence" and that Barberree is properly classified as a career offender.

### Barberree's § 851 Claim

Barberree claims that the government's § 851 Information was defective because the conviction noted in the Information had been vacated. Barberree raises this claim on collateral review for the first time.

### Barberree's § 851 Claim Is Procedurally Barred

Ordinarily, claims that previously were available and were not raised in a prior proceeding are procedurally defaulted and barred from consideration on collateral review. *See Bousley v. United States*, 523 U.S. 614, 622-24 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001). When a defendant raises a constitutional claim on collateral review that he failed to raise in the trial proceedings or on direct appeal, he bears the burden of establishing cause and actual prejudice resulting from the error to excuse both defaults. *McCoy*, 266 F.3d at 1258-59. To show cause for not raising a claim in an earlier proceeding, a petitioner must show "some external impediment preventing counsel from constructing or raising the claim." *See High v. Head*, 209 F.3d 1257, 1262-63 (11th Cir. 2000) (quoting *McCleskey v. Zant*, 499 U.S. 467, 497 (1991)). To establish prejudice, the petitioner must prove that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *See Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999) (internal

quotations omitted). This is a heavier burden than the burden of establishing plain error on appeal. *See Frady*, 456 U.S. at 164.

Barberree cannot meet this burden. The record provides no evidence that Barberree invoked any of the available section 851 procedures to deny the prior conviction. The resulting sentence enhancement was reflected in Barberree's plea agreement and discussed at Barberree's change of plea hearing, and Barberree raised no objection to the enhancement. See Doc. CR-132. Although Barberree objected to the § 851 information at some point prior to sentencing, the matter was discussed at the sentencing hearing and the objection was explicitly withdrawn. Doc. CR-133 at 9. At the hearing, counsel for Barberree discussed the enhancement and his consideration of potential objections, ultimately declining to pursue any objections at that time. Id. at 8-9. There was no "external impediment" preventing Barberree from pursuing his claim that the underlying conviction was invalid or that the information was somehow defective.

### Barberree's Amphetamine Trafficking Conviction Is Valid

Even if Barberree's section 851 claim was not procedurally barred, it is without merit. Barberree claims that "the government erroneously cited a trafficking conviction that had been vacated and no longer stood as a prior conviction," but he provides no support for this claim. See Doc. CV-10 at 2. The record demonstrates that he is mistaken. At sentencing, Barberree's counsel discussed his research into the prior conviction on Barberree's behalf.[5] Doc. CR-133 at 8. He conceded that "under the law that is a valid

---

[5] Counsel discussed Barberree's contention that the prior conviction had earlier been set aside. Doc. CR-133 at 8. Counsel further noted that, after reviewing the file of the state case, it appeared to him that Barberree had been resentenced in 2005 after an initial adjudication in 2003, but that the conviction itself was not vacated. Id.

conviction." Id. This conclusion was in agreement with the PSR and the government's § 851 notice. PSR ¶ 57; Doc. CR-51. (A copy of Barberee's conviction is attached to this order as Exhibit One.)

Barberree has failed to meet his burden, and he is not entitled to 28 U.S.C. § 2255 relief. *See Barnes v. United States*, 579 F.2d 364, 365 (5th Cir.1978) (movant has the burden of establishing that he is entitled to relief under § 2255).

Accordingly, the Court orders:

That Barberree's 28 U.S.C. § 2255 motion to vacate (Doc. CV-1; CR126) is denied. The Clerk is directed to enter judgment against Barberree and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on April 13, 2011.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

AUSA: Kathy J.M. Peluso
Lewis Josh Barberree